**CENTRAL HUDSON GAS AND ELECTRIC CORPORATION, Plaintiff,**

v.

**The M/V LUNAMAR II, her engines, etc. in rem and Seiriki One (Panama), S.A. in personam, Defendants.**

**No. 88 Civ. 359 (VLB).**

United States District Court, S.D. New York.

Sept. 9, 1992.

Haight, Gardner, Poor & Havens, New York City, for plaintiff.

Richard A. Corwin, Walker & Corsa, New York City, for defendants.

### MEMORANDUM ORDER ON DAMAGES

VINCENT L. BRODERICK, District Judge.

By memorandum order of April 7, 1992, I found the M/V LUNAMAR II responsible

for damage to plaintiff's cable line under the Hudson River and requested the parties to submit further papers concerning damages. The following are my findings of fact and conclusions of law on that subject; they incorporate by reference and supplement the findings made in the memorandum order of April 7, 1992.

Plaintiff's property was destroyed by wrongful act of defendants, and defendants are liable to the plaintiff for the full cost of replacement necessitated by the harm caused. See *Standard Oil Co. v. Southern Pacific Co.*, 268 U.S. 146, 155, 45 S.Ct. 465, 466, 69 L.Ed. 890 (1925); *Pillsbury Co. v. Midland Enterprises*, 715 F.Supp. 738, 763 (E.D.La.1989), *aff'd* 904 F.2d 317 (5th Cir.1990).

After deleting all internal overhead and costs for burying and trenching new pipe, the total damage incurred by plaintiff as a result of the rupture of the underwater pipe and cable and disruption in service to customers caused by the LUNAMAR II as described in the memorandum order of April 7, 1992 is $3,371,937.60 exclusive of interest and litigation costs.

■ Prejudgment interest is appropriate in admiralty cases and is not governed by a statutory rate. See *Independent Bulk Transp. v. MORANIA ABACO*, 676 F.2d 23 (2d Cir.1982); *Canova v. Travelers Ins. Co.*, 406 F.2d 410 (5th Cir.1969).

■ Prejudgment interest on the compensatory amount set forth above, at the reasonable rate for the period of 9%, amounts to $1,259,917.81 as of July 30, 1992 prior to any reductions.

A handwritten document concededly written by one of plaintiff's supervisory staff, Exhibit BBBBBBBB describing selection of an option for repair work after the damage to plaintiff's underwater line as follows:

"This approach uses Option 3 as a minimum, and Option 4 as a maximum.... Written this way, we feel we maximize the likelihood of collecting for the total job."

Plaintiff does not argue that this document was written by a minor official, was not acted upon, or fails to reflect plaintiff's decisionmaking process. Instead, plaintiff's memorandum of law on the subject appears to concede that this exhibit means what it appears to mean, and focuses on defending plaintiff's right to choose its own repair option.

The clear indication from this exhibit and plaintiff's defense of it is that executives of the plaintiff sought, to some degree, to use the litigation process in ways contrary to the well-known duty to mitigate damages one seeks to collect, even though this duty does not restrict what one actually does. This cannot properly be ignored by the court when discretionary relief is sought.

This document does not, however, suggest destruction or distortion of evidence, see *Welsh v. United States*, 844 F.2d 1239, 1244–47 (6th Cir.1988). Treatment of a document as making such suggestion when it does not would be as inappropriate as ignoring spoliation if established. See *Stephens v. South Atlantic Canners*, 848 F.2d 484, 487 (4th Cir.1988).

While evidence of intent can sometimes serve as evidence of probable effect, depending on the totality of the circumstances, see *Broadcast Music, Inc. v. CBS*, 441 U.S. 1, 19, 99 S.Ct. 1551, 1562, 60 L.Ed.2d 1 (1979); *cf. United States v. United States Gypsum Co.*, 438 U.S. 422, 436 n. 13, 98 S.Ct. 2864, 2873 n. 13, 57 L.Ed.2d 854 (1978), here the objective of plaintiff was to replace a good line with an equally good line under subsequent engineering requirements and there is no credible indication that the actual repair undertaken was an excessive response rather than a mere replacement of the damaged line attempting to conform to construction standards as of the time of the repair.

Litigation-related behavior undertaken for improper objectives can be subject to attack even if the underlying claim has merit, as illustrated in another (antitrust) context by *Grip–Pak, Inc. v. Illinois Tool Works*, 694 F.2d 466 (7th Cir.1982), *cert. denied* 461 U.S. 958, 103 S.Ct. 2430, 77 L.Ed.2d 1317 (1983).

The fact that I find that the ultimate claim of plaintiff in regard to the work

done was justified, and that I do not find any independently illegal litigation behavior on the part of plaintiff, thus does not mean that it is fully entitled to otherwise appropriate discretionary relief. A reduction in discretionary prejudgment interest is justified because of the indication of an initial decision to seek to inflate rather than mitigate the amount recoverable.

Plaintiff's request for prejudgment interest is reduced by $200,000, yielding a net figure of $1,059,917.81.

Plaintiff's computations for accounting purposes and for purposes of its rate submissions to regulatory authorities reflect depreciation on its sub-Hudson line injured by the defendant vessel which are not taken into account in plaintiff's damage claims.

The credible evidence indicates that plaintiff's underwater line experienced no substantial physical depreciation or problems prior to the damage caused by the defendant vessel and had an indefinite useful life.

■ The accounting and rate regulatory submissions of plaintiff are not controlling in this admiralty damage action. But regulatory authorities should be informed of the position taken by plaintiff in this admiralty litigation for whatever bearing it may have on their consideration of depreciation claims. Plaintiff is thus directed to furnish copies of this memorandum order and of both parties' submissions in this case relative to damages to the New York State Public Service Commission and any other agencies to which depreciation data with respect to the line involved have been submitted since the instant litigation was filed.

There is no credible evidence of contributory negligence or fault on the part of plaintiff in connection with the damage caused by the defendant vessel. As indicated in the memorandum order of April 7, 1992, the plaintiff's underwater line involved in this litigation experienced no significant difficulty during any relevant period prior to the incident involving the defendant vessel. Accordingly there is no basis for division or allocation of damages between the parties.

Judgment will be entered by separate document under Rule 58 of the Federal Rules of Civil Procedure awarding to plaintiff the $3,371,937.60 in damages together with $1,059,917.81 in prejudgment interest for a total of $4,431,855.41 together with subsequent interest from July 30, 1992 as against the defendant vessel, together with costs to be taxed by the clerk.

Plaintiff is directed to submit a proposed judgment on notice together with the interest computation.

SO ORDERED.